IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PAMELA A. KACZMAREK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 17 C 2785 |
| v. | ) | |
| | ) | Magistrate Judge |
| NANCY A. BERRYHILL, Acting | ) | Maria Valdez |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Plaintiff Pamela A. Kaczmarek's claims for Disability Insurance Benefits ("DIB") under Titles II of the Social Security Act (the "Act"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Plaintiff's motion for summary judgment [Doc. No. 19] is denied and the Commissioner's cross-motion for summary judgment [Doc. No. 27] is granted.

## BACKGROUND

### I. PROCEDURAL HISTORY

Plaintiff filed her application for DIB on January 29, 2013, alleging disability due to fibromyalgia, severe arthritis, pain, and alpha 1 antitrypsin deficiency. (R. 255–56.) Her application were denied initially and again upon reconsideration.

1

(R.103, 112.) Plaintiff presented for a hearing before an Administrative Law Judge ("ALJ") on October 7, 2015,[1] represented by an attorney. (R. 35–76.) A vocational expert ("VE") was present and offered testimony. (*Id.*) On January 11, 2016, the ALJ issued an unfavorable decision. (R. 18–28.) The Appeals Council denied review on February 14, 2017, leaving the ALJ's decision as the final decision of the Commissioner and, therefore, reviewable by the District Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005); *Herron v. Shalala*, 19 F.3d 329, 332 (7th Cir. 1994); (R. 1–3.)

## II.   ALJ DECISION

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. (R. 20.) At step two, the ALJ found that through her date last insured of December 31, 2013, Plaintiff suffered from severe impairments of fibromyalgia and cervical degenerative disc disease, but her alpha 1 antitrypsin deficiency and arthritis of the knee were non-severe. (*Id.*) At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medical equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 21.)

Before step four, the ALJ found that she had the residual functional capacity ("RFC") to perform work at a light exertional level, subject to a limitation on concentrated exposure to temperature extremes. (R. 22.) At step four, the ALJ concluded that through her date last insured, Plaintiff was capable of performing

---

[1] Plaintiff originally presented at a hearing on June 25, 2015 but was granted an extension to find representation. (R. 77–94.)

her past relevant work as an office clerk and accounting clerk and therefore was not disabled under the Act. (R. 27–28.)

## DISCUSSION

### I. ALJ STANDARD

Under the Act, a person is disabled if he has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform his former occupation? and (5) Is the plaintiff unable to perform any other work? 20 C.F.R. § 416.920(a)(4).

An affirmative answer at either step three or step five leads to a finding that the plaintiff is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer to any remaining question precludes a finding of disability. *Id.* The plaintiff bears the burden of proof at steps one through four. *Id.* Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the plaintiff's ability to engage in other work existing in significant numbers in the national economy. *Id.*

## II. JUDICIAL REVIEW

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). This Court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Skinner*, 478 F.3d at 841; *see also Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding that the ALJ's decision must be affirmed even if "reasonable minds could differ" as long as "the decision is adequately supported.") (internal citation omitted).

The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). In cases where the ALJ denies benefits to a plaintiff, "he must build an accurate and logical bridge from the evidence to [her] conclusion." *Clifford*, 227 F.3d at 872. The ALJ must at least minimally articulate the "analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex*

*rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007) ("An ALJ has a duty to fully develop the record before drawing any conclusions . . . and must adequately articulate his analysis so that we can follow his reasoning. . . ."); *see Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005).

We review the ALJ's decision but we play an "extremely limited" role. *Elder*, 529 F.3d at 413. Where conflicting evidence would allow reasonable minds to differ, the responsibility for determining whether a plaintiff is disabled falls upon the Commissioner, not the court. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). However, an ALJ may not "select and discuss only that evidence that favors his ultimate conclusion," but must instead consider all relevant evidence. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994).

## III. ANALYSIS

Plaintiff argues remand is appropriate because: (1) the ALJ's credibility determination was patently wrong; and (2) the ALJ's proffered RFC was erroneous.[2] For the reasons that follow, the Court disagrees.

---

[2] In her opening brief, Plaintiff also alleged a step five error but did not present any supporting arguments; therefore, the asserted error is waived.

## A. Credibility Assessment

Because the RFC assessment will often "depend heavily on the credibility of [a claimant's] statements concerning the 'intensity, persistence and limiting effects' of [his] symptoms," the Court first addresses Plaintiff's argument that the ALJ improperly analyzed his symptom statements. *See Bjornson v. Astrue,* 671 F.3d 640, 645 (7th Cir. 2012); *see also Outlaw v. Astrue*, 412 Fed. App'x 894, 897 (7th Cir. 2011) (unpublished decision) (noting that "RFC determinations are inherently intertwined with matters of credibility[.]").

When a claimant alleges limitations arising from symptoms such as pain, an ALJ must evaluate the claimant's credibility "to determine the extent to which the symptoms limit the individual's ability to do basic work activities."[3] SSR 96-7p, 1996 WL 374186, at *2; 20 C.F.R. § 404.1529(c). In rendering a credibility determination, the ALJ must make findings "based on a consideration of the entire case record," which includes "the medical signs and laboratory findings, the individual's own statements about the symptoms, any statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record." *See* 96-7p, 1996 WL 374186, at *3.

A reviewing court grants an ALJ's credibility determination "considerable deference" and will overturn the determination only if it is "patently wrong." *Terry*

---

[3] The SSA clarified that revised credibility SSR 16-3p applies when ALJs "make determinations on or after March 28, 2016." *See* Notice of Social Security Ruling, 82 Fed. Reg. 49462 n.27 (Oct. 25, 2017). Because the ALJ issued his opinion on January 11, 2016, SSR 96-7p is the relevant guidance for this case.

6

*v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009) (quoting *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006)) (internal quotation omitted). In making her determination, the ALJ must consider the factors specified in 20 C.F.R. § 404.1529(c) "and must justify the credibility finding with specific reasons supported by the record." *Id.* However, in conducting its review a court "merely examine[s] whether the ALJ's determination was reasoned and supported. It is only when the ALJ's determination lacks any explanation or support that we will declare it to be 'patently wrong' and deserving of reversal." *Elder*, 529 F.3d at 413-14 (quoting *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003)) (internal quotation omitted).

Plaintiff argues, in part, that the ALJ's RFC is flawed because she failed to consider the nature of fibromyalgia. Although unclear, Plaintiff seems to argue that because fibromyalgia's symptoms are subjective, the ALJ was required to accept as true Plaintiff's testimony regarding pain, fatigue, sleep disturbances, and stiffness. To the extent this is what Plaintiff meant, the Court disagrees, because nothing requires an ALJ to accept Plaintiff's testimony as true simply because her condition may have a subjective symptomology. *See Thompson v. Colvin*, 575 Fed. App'x 668, 677 (7th Cir. 2014) (unpublished decision) (noting that a diagnosis of fibromyalgia does not entitle plaintiff to benefits). The ALJ acknowledged that fibromyalgia was a severe impairment, and reasonably concluded that the condition was not incapacitating.

In her decision, the ALJ noted that Plaintiff's symptoms were well controlled with medication and that she did not report side effects. *See* SSR 96-7p (noting that

7

ALJs should consider the effectiveness and side effects of any medication taken to alleviate pain.) Plaintiff objects, claiming that the ALJ failed to consider potential side effects. Notably however, there is no evidence that Plaintiff complained of side effects to doctors. Likewise, there is no evidence that doctors attempted to change the dosage or inquired into changing pain medications. Where the record does not contain evidence that a claimant is limited by the side effects of her medications, "it would be speculation to assume that [the claimant] automatically suffers from those side effects." *Schaaf v. Astrue*, 602 F.3d 869, 876 (7th Cir. 2010); *see also Skinner v. Astrue*, 478 F.3d 836, 845 (7th Cir. 2007) (affirming ALJ's decision to discount plaintiff's statements about the severity of symptoms because "the record medical evidence established that those symptoms are largely controlled with proper medication and treatment.") Accordingly, the Court finds no error in the ALJ's observation that Plaintiff did not experience side effects.

In addition, the ALJ discounted Plaintiff's testimony because she did not follow up with pain management. *See* SSR 96-7p (explaining that ALJs should consider the treatment, other than medication, the individual receives). At the hearing, the ALJ questioned Plaintiff about her decision not to follow up with pain management. (R. 54–55.) She stated that, although she was deemed to be a candidate, she did not follow through because she was not given a free consultation. (*Id*.) The ALJ reasonably concluded that if her pain were was severe as alleged, Plaintiff would have tried harder to obtain pain management. *See Schmidt v. Astrue*, 496 F.3d 833, 844 (7th Cir. 2007) (noting that plaintiff's decision to

8

"voluntarily discontinued physical therapy and [decline] pain management, . . . cast doubt on the severity of [plaintiff's] pain and her need to alleviate it").

Plaintiff also argues that the ALJ improperly considered Plaintiff's gap in treatment, without inquiring as to why those gaps existed. To the extent Plaintiff is correct, she has "not explained how she was harmed by the ALJ's failure to explore her reasons." *See Summers v. Colvin*, 634 Fed. App'x 590, 592 (7th Cir. 2016) (unpublished decision) (noting ALJ's failure to inquire into reasons for lack of treatment was harmless error). Indeed, the Seventh Circuit has explained that "[n]ot all of the ALJ's reasons must be valid as long as *enough* of them are[.]" *Halsell v. Astrue*, 357 Fed. App'x 717, 722 (7th Cir. 2009) (unpublished decision). Although the ALJ here failed to consider the reasons for Plaintiff's lack of treatment, she provided several other explanations for her negative credibility determination.

Plaintiff's remaining points are meritless. For example, Plaintiff mistakenly claims that the ALJ failed to assess the impact pain had on her ability to sleep. The ALJ explicitly noted that Plaintiff's poor sleep was likely attributable to other factors, namely her morning routine and her caffeine intake. (R. 26.) Furthermore, Plaintiff admitted that medication helped her sleep issues. (*Id*.) In addition, Plaintiff asserts that the ALJ failed to consider the effects pain had on her ability to perform daily activities. Although the ALJ could have provided more analysis, she did not overstate Plaintiff's testimony regarding her daily activities. *See Jones v. Astrue*, 623 F.3d 1155, 1162 (7th Cir. 2010) (noting that plaintiff's argument merely

9

asks the court to reweigh the evidence and arrive at a different conclusion). Ultimately, "the flaws in the ALJ's reasoning are not enough to undermine the ALJ's decision." *Halsell*, 357 Fed. App'x at 722.

B.  **Residual Functional Capacity**

Plaintiff contends that the ALJ committed several errors when determining her RFC. An RFC "represents the most that an individual can do despite his or her limitations or restrictions." SSR 96-8p, 1996 WL 374184, at *4; *see* 20 C.F.R. § 1545(a)(1). This determination is used at step four to determine whether a claimant is capable of performing his past work, and at step five to determine whether a claimant is capable of performing other work. *See id.* at *3-4. An ALJ must make her RFC determination based on all of the relevant evidence in the case record. *Id.* at *5.

Plaintiff argues that the ALJ's RFC analysis was inadequate because it was not sufficiently supported by a narrative discussion of the evidence as required by Social Security Ruling 96-8p. She contends that the ALJ erred by failing to provide a sufficient function-by-function analysis of her RFC. However, "[a]lthough the 'RFC assessment is a function-by-function assessment,' the expression of a claimant's RFC need not be articulated function-by-function; a narrative discussion of a claimant's symptoms and medical source opinions is sufficient." *Knox v. Astrue*, 327 Fed. App'x 652, 657 (7th Cir. 2009) (unpublished decision) (quoting SSR 96-8p) (internal citations omitted).

While not requiring a function-by-function analysis, however, an ALJ's RFC "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e.g.,* laboratory findings) and nonmedical evidence (*e.g.,* daily activities, observations)." SSR 96-8p, 1996 WL 374184, at *7; *see Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005). Plaintiff argues that the ALJ's decision did not contain an adequate narrative discussion because the ALJ merely summarized the medical evidence, emphasizing favorable evidence and ignoring evidence that contradicted her conclusion. As an initial point, the Court notes that Plaintiff's argument is underdeveloped. Although Plaintiff alleges that the ALJ impermissibly cherry picked the record, she does not cite to any examples in the record to corroborate her claim. *See Nelson v. Napolitano,* 657 F.3d 586, 590 (7th Cir. 2011) ("Neither the district court nor this court are obliged to research and construct legal arguments for parties, especially when they are represented by counsel."). Similarly, Plaintiff cites to three cases, but does not discuss them at all.[4] Nonetheless, contrary to Plaintiff's contentions, the ALJ provided a sufficient discussion here, and her decision was supported by substantial evidence. The ALJ specifically reviewed the medical evidence, (R. 22-27), and cited the opinions of state agency medical

---

[4] Although the cases cited by Plaintiff discuss "cherry-picking" it is unclear how the cases support Plaintiff's argument, as all three are related to an ALJ's analysis of mental impairments. In *Yurt v. Colvin*, the Seventh Circuit criticized the ALJ for relying on a non-examining physician who cherry-picked GAF scores. 758 F.3d 850, 859-60 (7th Cir. 2014). Likewise, in *Bates v. Colvin*, 736 F.3d 1093, 1099 (7th Cir. 2013), the court remanded based on mental impairments, and in *Price v.* Colvin,794 F.3d 836, 839 (7th Cir. 2015), the court noted that the ALJ cherry-picked GAF scores.

11

consultants, whose limitations to light work were ultimately incorporated into her RFC determination. (R. 26.) In this case, the ALJ provided an appropriate narrative discussion, and her RFC determination was supported by substantial evidence. *See Knox*, 327 Fed. App'x at 657 ("The ALJ satisfied the discussion requirements by analyzing the objective medical evidence, [claimant]'s testimony (and credibility), and other evidence.")

Plaintiff also takes issue with the ALJ's handling of Alpha 1 antitrypsin deficiency.[5] She argues that the ALJ "played doctor" by purportedly interpreting medical evidence. Contrary to Plaintiff's assertion, however, the ALJ did not interpret medical evidence. Rather, the ALJ concluded that Plaintiff's deficiency was not severe because she was not experiencing symptoms. (R. 21.) Being diagnosed with an impairment by itself does not mean it imposes any restrictions, and it is Plaintiff who bears the burden of establishing specific limitations affecting her capacity to work. *Weaver v. Berryhill*, No. 17-3562, 2018 WL 3996853, at *3 (7th Cir. Aug. 20, 2018). In this case, Plaintiff has not established any limitation stemming from the deficiency. Instead, she speculates that the deficiency "*may* contribute to chronic obstructive pulmonary disease (COPD)." There is no evidence however, that Plaintiff was experiencing lung or liver issues, let alone COPD.

---

[5] Alpha 1 antitrypsin deficiency is a genetic condition which may result in lung or liver disease. *Available at* https://ghr.nlm.nih.gov/condition/alpha-1-antitrypsin-deficiency (last viewed 9/11/2018).

In addition, Plaintiff maintains that the ALJ failed to consider the "voluminous laboratory reports" that were submitted after the hearing.[6] As with her cherry-picking argument, Plaintiff does not cite to specific evidence or to relevant legal authority. Instead, she vaguely asserts that "considerable medical evidence remains un-adjudicated in the present record." (Pl.'s Mem. at 9.) To the extent that Plaintiff is arguing that the ALJ was unaware of the evidence, the Court disagrees. Notably, the ALJ explicitly references several post-hearing records in her decision. (R. 24–25), and Plaintiff herself acknowledges that the ALJ referenced post hearing evidence.[7] Therefore, the Court cannot conclude that the ALJ did not consider the evidence. Ultimately, Plaintiff has neither provided any evidence contrary to the ALJ's findings nor demonstrated any legal error in that regard. As such, the Court affirms the ALJ's decision in its entirety.

---

[6] Following the hearing, Plaintiff submitted over 300 pages of medical records, most of which either pre-date her onset date, or are dated after her DLI. (R. 38.)

[7] Plaintiff criticizes the ALJ's reliance on a CT scan, which was in exhibit 26F, the very exhibit Plaintiff claims the ALJ did not consider. (Pl.'s Mem. at 9.)

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment [Doc. No. 19] is denied and the Commissioner's cross-motion for summary judgment [Doc. No. 27] is granted.

**SO ORDERED.**  **ENTERED:**

**DATE:  November 28, 2018**

_____
**HON. MARIA VALDEZ**
**United States Magistrate Judge**